UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELISSA MORAND-DOXZON, on behalf of herself, all others similarly situated, and on behalf of the general public,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DELAWARE NORTH COMPANIES SPORTSERVICE, INC.; CALIFORNIA SPORTSERVICE, INC.; and DOES 1-100,<br><br>　　　　　Defendants. | Case No. 20-cv-1258 DMS (BLM)<br><br>**ORDER DENYING MOTION TO REMAND** |

Pending before the Court is Plaintiff Melissa Morand-Doxzon's renewed motion to remand. Defendants Delaware North Companies Sportservice, Inc. and California Sportservice, Inc. filed a response in opposition to Plaintiff's motion. Plaintiff filed a reply.[1] For the following reasons, Plaintiff's motion is denied.

/ / /

/ / /

---

[1] Defendants also filed objections to Plaintiff's request for judicial notice. The Court declines to rule on the objections as the matters sought to be judicially noticed are not relied on in this Order.

# I.

# BACKGROUND

On May 26, 2020, Plaintiff, on behalf of herself, all others similarly situated, and on behalf of the general public, commenced the present action against Defendants in the San Diego County Superior Court. Plaintiff brings the following claims against Defendants: (1) failure to pay all straight time wages, (2) failure to pay all overtime wages, (3) failure to provide meal periods, in violation of Cal. Labor Code §§ 226.7 and 512 and the applicable California Industrial Welfare Commission ("IWC") Wage Order, (4) failure to authorize and permit rest periods, in violation of Cal. Labor Code § 226.7 and the applicable IWC Wage Order, (5) failure to provide suitable resting facilities for meal or rest periods, in violation of Cal. Labor Code § 226.7 and the applicable IWC Wage Orders, (6) knowing and intentional failure to comply with itemized employee wage statement provisions, in violation of Cal. Labor Code §§ 226, 1174 and 1175, and the applicable IWC Wage Order, (7) failure to pay all wages due at the time of termination of employment, in violation of Cal. Labor Code §§ 201–203, (8) violations of the Labor Code Private Attorneys General Act of 2004 ("PAGA"), and (9) violation of unfair competition law, under Cal. Bus. & Prof. Code § 17200 *et seq*. (ECF No. 1-2.)

On July 6, 2020, Defendants removed the case to this Court based on (1) the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332, and (2) Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (ECF No. 1.) Plaintiff filed a motion to remand the case to state court arguing that CAFA's Local Controversy and Home State Controversy Exceptions applied. The Court denied the motion without prejudice because Plaintiff failed to demonstrate that an exception to CAFA applied.[2] (ECF No. 23.)

---

[2] Plaintiff also argued remand was proper because Defendants failed to show that her claims were preempted by Section 301 of the LMRA. (ECF No. 9.) The Court did not reach the issue because subject-matter jurisdiction was established under

Plaintiff now renewed motion to remand, arguing that new jurisdictional discovery shows the local controversy exception to CAFA applies to this case. (ECF No. 28.) Plaintiff also argues that Defendants have not met their burden of demonstrating that Section 301 of the LMRA preempts any of the causes of action in the Complaint. (*Id.*) The Court declines to reach the latter argument because subject matter jurisdiction exists under CAFA.

## II.
## LEGAL STANDARDS

The Class Action Fairness Act was passed by Congress "to permit defendants to remove class actions to federal court if they meet three requirements: there must be minimal diversity of citizenship between the parties; the proposed class must have at least 100 members; and the aggregated amount in controversy must equal or exceed the sum or value of $5 million." *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1182 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)). Furthermore, "no antiremoval presumption attends cases invoking CAFA," and its provisions must be interpreted "broadly in favor of removal." *Id.* at 1184 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). Although the party seeking removal still bears the burden of establishing removal jurisdiction, the party seeking remand bears the burden of showing that an exception to CAFA jurisdiction applies. *See, e.g.*, *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 883 (9th Cir. 2013); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007).

The local controversy exception to CAFA provides that district courts shall decline jurisdiction where (1) "more than two-thirds of the plaintiffs are citizens of California"; (2) "at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims is a California citizen"; (3) "the principal injuries about which Plaintiffs complain were suffered in

---

CAFA.

California"; and (4) "no similar class action has been filed against any of the defendants in the preceding three years." *Bridewell-Sledge v. Blue Cross of California*, 798 F.3d 923, 929 (9th Cir. 2015); 28 U.S.C. § 1332(d)(4)(A). "CAFA was intended to strongly favor federal jurisdiction over interstate class actions." *King v. Great American Chicken Corp., Inc.*, 903 F.3d 875, 879 (9th Cir. 2018) (citing *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017)). The local controversy exception is intended to be applied narrowly, "particularly in light of the purposes of CAFA." *Benko v. Quality Loan Service Corp.*, 789 F.3d 1111, 1116 (9th Cir. 2015). Indeed, when courts evaluate whether this exception applies, "all doubts [should be] resolved in favor of exercising jurisdiction over the case." *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (quotation omitted); *see also Arbuckle Mountain Ranch v. Chesapeake Energy Corp.*, 810 F.3d 335, 338 (5th Cir. 2016) ("If the applicability of an exception is not shown with reasonable certainty, federal jurisdiction should be retained").

### III.
### DISCUSSION

Plaintiff argues that remand is proper under the local controversy exception to CAFA. (ECF No. 28.) In this case, only one of the exception's requirements is in dispute: whether Plaintiff has demonstrated that more than two-thirds of the plaintiffs are citizens of California.

As discussed, the local controversy exception to CAFA only applies where more than two-thirds of the action's prospective class members are citizens of the state where the action was filed. *Mondragon*, 736 F.3d at 883–884. The statute does not provide for remand based solely on a plaintiff's allegations, when those allegations are challenged by the defendant. *Id*. at 884. A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard. *Id*. Plaintiff bears the burden of demonstrating that a CAFA exception applies. *Id*. at 883.

To qualify for the local controversy exception, Plaintiff must show that more than 66.66% of the purported class members are citizens of California. Citizenship is determined by a person's state of domicile," which is defined as the state "where (i) she resides, (ii) 'with the intention to remain or to which she intends to return.'" *Adams v. West Marine Products, Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020). "[N]umerous courts treat a person's residence as prima facie evidence of the person's domicile." *Mondragon*, 736 F.3d at 886 (citations omitted). To this end, Plaintiff provides the court with a list of prospective class members' residences to demonstrate their California citizenship. (ECF No. 28-1 at 15–16; ECF No. 28-2 at 3–4, 56–101.) The list excludes addresses of class members who requested that their contact information not be disclosed to Plaintiff's counsel, as well as addresses to which materials sent by the third-party were unable to be delivered. (ECF No. 28-1 at 15; ECF No. 28-2 at 3–4.) Plaintiff provides no evidence as to the residency of those two groups of putative class members. The list shows that 2,292 out of 2,833 class members have California addresses. (ECF No. 28-1 at 15–16; ECF No. 28-2 at 3–4, 56–101.) Plaintiff takes these numbers and calculates that 81% of class members live within California.³ (ECF No. 28-1 at 16; ECF No. 28-2 at 4.)

However, the list's evidentiary value to establishing citizenship of class members is dubious. "[A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon*, 736 F.3d at 885. Here, citizenship is determined "as of the

---

³ Plaintiff also submits evidence pertaining to a "skip tracing" process conducted by a third-party company, the results of which purportedly represent a more accurate accounting of the addresses of putative class members. (*See* ECF No. 28-1 at 17–18.) Plaintiff asserts this search methodology, when applied to the assumptions she used to establish the 81% residency figure, reveals that "78% of class members live within California." (*Id.* at 18 (emphasis omitted).) Defendants raise numerous objections to this evidence. (ECF No. 31 at 11–12.) The Court declines to rule on these objections because the Court's reasoning applies equally to the 78% figure.

date the case became removable[.]" *Id.* at 883; 28 U.S.C. § 1332(d)(7). While Defendants removed the case on July 7, 2020, it *became removable* on May 26, 2020, when the complaint was filed.

Nonetheless, Plaintiff argues that because May 26 "is still in close proximity to the date on which Defendants provided the address information," the presumption of continuing domicile means that she "has shown that two-thirds of the class members were California citizens at the time of removal." (ECF No. 33 at 10.) This misconstrues both the exception's citizenship requirement and the nature of the presumption of continuing domicile. First, citizenship is properly determined as of the date upon which removal becomes possible, not the date upon which removal actually occurs. Thus, the Court is concerned with determining class members' citizenship as of May 26, not any other date. Second, the presumption of continuing domicile is forward-looking, so even if the list provides prima facie evidence of citizenship, it only does so for dates *after* it was created. This presumption does not reach back to the relevant date of May 26, 2021.

This is not the end of Plaintiff's problems. For example, Plaintiff cites *Calleros v. Rural Metro of San Diego, Inc.*, as an instance where a court used a class residence address list to determine that the two-thirds citizenship requirement was satisfied. (ECF No. 28-1 at 16 (citing 2018 WL 2228710 (S.D. Cal. May 15, 2018).) There, however, the defendants "offer[ed] no evidence that would support a finding that less than two-thirds of the class members [were] California citizens." *Calleros*, 2018 WL 2228710 at *3.

In this case, by contrast, Defendants introduce uncontested evidence that 15.3% of prospective class members are not United States citizens. (ECF No. 31-1.) "To be a citizen of a state, a natural person must first be a citizen of the United States." *Adams*, 958 F.3d at 1221 (quoting *Kanter v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001)). Defendants argue that Plaintiff has failed to show that two-thirds of the putative class members are citizens of California because "using

Plaintiff's assumptions and calculations, and subtracting out the 15.3% of potential class members who are not U.S. citizens, only 65.7% of the potential class members could be California citizens." (ECF No. 31 at 16.) Considering the general principle encouraging the resolution of doubt in favor of exercising jurisdiction, the Court is persuaded by Defendants' reasoning.

Plaintiff replies that Defendants' calculation is inapposite because it assumes that the percentage of non-citizens identified by Defendants should be subtracted from the total number of class members, rather than the percentage of purported California citizens. (ECF No. 30 at 11.) She further argues that the number of non-United States citizens likely overlaps with class members who have undeliverable addresses. (*Id.*) While district courts may draw reasonable inferences from facts in evidence to determine whether CAFA's local controversy exception applies, "jurisdictional finding of fact should be based on more than guesswork." *Mondragon*, 736 F.3d at 884. Plaintiff provides no evidence upon which the Court could draw such an inference. The Ninth Circuit has held that the local controversy exception "require[es] evidentiary proof of propositions that appear likely on their face," even where doing so will cause inefficiency. *Mondragon*, 736 F.3d at 884. The same court resolved a case against a party seeking remand under the local controversy exception, partly based on a similar lack of evidence regarding non-United States citizens in the proposed class. *See King v. Great American Chicken Corp., Inc.*, 903 F.3d 875, 879 (9th Cir. 2018) (finding party moving for remand failed to show two-thirds local state citizenship in absence of evidence indicating proportion of non-United States citizens in proposed class). Because Plaintiff has not established that the non-United States citizens identified by Defendants are not California residents, the Court finds Plaintiff has failed to show the two-thirds citizenship threshold is met. Therefore, the local controversy exception does not apply.

/ / /

## IV.
## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is denied.

**IT IS SO ORDERED.**

Dated: March 4, 2021

_____
Hon. Dana M. Sabraw
United States Chief District Judge